IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE    *    MDL Docket No. 2004
                                            4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *

LIABILITY LITIGATION            *    Case Nos.
                                            4:13-cv-93 (Jackson)
                                            4:13-cv-101 (Rupert)
                                *    4:13-cv-151 (Charles)
                                            4:13-cv-153 (Klum)
                                *    4:13-cv-241 (Leon)
                                            4:13-cv-346 (Urbieta)
                                *    4:13-cv-377 (Lovell)
                                            4:13-cv-426 (Suen)
                                *    4:13-cv-483 (Uriegas)
                                            4:13-cv-503 (Degroot)
                                *    4:14-cv-61 (Hall)
                                            4:14-cv-63 (Chambers)

_____    *

<u>O R D E R</u>

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Michele Jackson, Andrea Rupert, Wendy Charles, Carrie Klum, Olga Leon, Graciela Urbieta, Sharon Lovell, Arleen Suen, Sylvia Uriegas, Debra Degroot, Libby Hall, and Sherry Lynn Chambers were implanted with ObTape and assert that they suffered injuries caused by ObTape. Each Plaintiff brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape.

Plaintiffs brought their claims under several theories.  Mentor seeks summary judgment on all of their claims.  For the reasons set forth below, the Mentor's summary judgment motions are granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

### I.   Plaintiff Michele Jackson (ECF No. 37 in 4:13-cv-93)

Michele Jackson sought treatment for stress urinary incontinence from Dr. Glen Diacon.  Dr. Diacon recommended ObTape, and he implanted Jackson with ObTape on March 26, 2004. In October 2004, Jackson visited Dr. Diacon's assistant and complained of pain near the ObTape incision site, as well as

suprapubic discomfort and dyspareunia.  The assistant felt some exposed graft material.  Jackson sought a second opinion from Dr. Daniel Barnes.  Dr. Barnes diagnosed Jackson with an erosion of the ObTape.  He recommended that Jackson have the exposed portion of the ObTape removed, and he told Jackson that the revision surgery "would most likely take away her pain."  Barnes Dep. 16:6-13, ECF No. 37-7 in 4:13-cv-93.  Dr. Barnes removed portions of Jackson's ObTape in November 2004.

Jackson is an Oklahoma resident whose ObTape-related treatment took place in Oklahoma.  On March 27, 2013, Jackson served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Jackson brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## II.  Plaintiff Andrea Rupert (ECF No. 41 in 4:13-cv-101)

Dr. Murphy Townsend diagnosed Andrea Rupert with incontinence, and he implanted Rupert with ObTape on May 3, 2004.  After the surgery, Rupert's incontinence improved.  In June 2005, Rupert went to the emergency room with extreme pain in her right groin, vaginal discharge and bleeding, and a foul odor.  The emergency room doctor attributed Rupert's symptoms to a urinary tract infection.

Rupert went to Dr. Townsend for follow-up on her emergency room visit. According to Rupert, Dr. Townsend told her that she had an infection and that "perhaps [her] body was not adapting well to the" ObTape. Rupert Dep. 47:8-15, ECF No. 43-3 in 4:13-cv-101. Dr. Townsend recommended that Rupert's ObTape be removed. On June 22, 2005, Dr. Townsend removed part of Rupert's ObTape and drained an abscess he discovered during the explant surgery. At some point, Dr. Townsend came to believe that ObTape was defective. Townsend Dep. 19:15-18, ECF No. 43-3 in 4:13-cv-101. He encouraged Rupert to contact Mentor to tell Mentor about her complications with ObTape, and Rupert did so. *Id.* at 18:18-19:10. In August 2005, Rupert visited Dr. Thomas Fassuliotis with recurrent incontinence. Dr. Fassuliotis noted that Rupert was concerned that half of her ObTape was still in her body and that it may become infected. Def.'s Mot. for Summ. J. Ex. E, History & Physical Examination (Aug. 2, 2005), ECF No. 41-8 in 4:13-cv-101. Dr. Fassuliotis also noted that Rupert stated that "this may be a litigious issue with the manufacturer of the Mentor Ob Tape." *Id.*[1]

---

[1] Rupert objects to the medical record because it has not been authenticated since scheduling conflicts prevented the parties from taking Dr. Fassuliotis's deposition before the dispositive motion deadline. Rupert does not appear to dispute that the document is her medical record from Dr. Fassuliotis's office, which she produced to Mentor during discovery. The Court thus finds that this document could be reduced to admissible evidence at trial and thus may be considered at summary judgment.

Rupert is a Georgia resident whose ObTape-related treatment took place in Georgia. On April 1, 2013, Rupert served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Rupert brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## III. Plaintiff Wendy Charles (ECF No. 34 in 4:13-cv-151)[2]

Wendy Charles sought treatment from Dr. Mitesh Parekh for stress urinary incontinence. On February 9, 2004, Dr. Parekh implanted Charles with ObTape. In April 2004 and again in January 2005, Charles reported to Dr. Parekh with groin pain. And in May 2005, Charles sent Dr. Parekh a medical journal article entitled "Groin Pain After a Tension-Free Vaginal Tape or Similar Suburethral Sling: Management Strategies" and expressed concern that ObTape was causing her groin pain. After Charles and Dr. Parekh discussed the pros and cons of removing Charles's ObTape, Charles decided to have the ObTape removed because she believed it was causing her groin pain. Dr. Parekh removed Charles's ObTape on March 27, 2006. At her follow-up

---

[2] Charles did not respond to Mentor's summary judgment motion or statement of material facts. Therefore, under the Court's local rules, Mentor's material facts are deemed admitted. M.D. Ga. R. 56. The Court has reviewed Mentor's citations to the record and determined that no genuine fact dispute exists.

visit, Charles reported that she was happy with the revision surgery and that her groin pain symptoms were gone.

Charles is a Pennsylvania resident whose ObTape-related treatment took place in Pennsylvania.  On May 7, 2013, Charles served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Charles brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## IV.  Plaintiff Carrie Klum (ECF No. 34 in 4:13-cv-153)

Carrie Klum visited Dr. Sakina Khalidi for treatment of stress urinary incontinence.  Dr. Khalidi implanted Klum with ObTape on June 3, 2004.  In February 2005, Klum visited Dr. Khalidi because she had been experiencing pressure in the lower abdomen and an occasional bleed for about three weeks.  Dr. Khalidi examined Klum and saw some exposed ObTape.  Dr. Khalidi told Klum that the ObTape was infected and that the bleeding was caused by the ObTape.  Dr. Khalidi prescribed an antibiotic and advised that the exposed portion of ObTape may need to be removed.  The next week, Dr. Khalidi removed a small segment of Klum's ObTape.  In February 2006, Klum returned to Dr. Khalidi complaining of blood in her urine and vaginal bleeding.  Klum understood from Dr. Khalidi that her body was rejecting the

ObTape and that is why she had an infection.  Dr. Khalidi advised Klum that the entire ObTape needed to be removed, but when Dr. Khalidi performed the revision surgery the entire ObTape could not be removed.

Klum is a Florida resident whose ObTape-related treatment took place in Florida.  On April 29, 2013, Klum served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Klum brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.  Her husband Anthony brought a loss of consortium claim.

## V.  Plaintiff Olga Leon (ECF No. 40 in 4:13-cv-241)

Dr. Bernard Morris implanted Olga Leon with ObTape on August 19, 2004.  In January 2005, Leon returned to Dr. Morris with complaints of pain and irritation.  Dr. Morris examined Leon, diagnosed an erosion of the ObTape, and told Leon that there was a problem with her ObTape and he would have to perform a revision surgery.  Leon Dep. 162:7-15, ECF No. 42-3 in 4:13-cv-241.  Dr. Morris removed Leon's eroded ObTape on January 11, 2005.  Leon testified that she started thinking about bringing a lawsuit regarding ObTape "after the second surgery."  *Id.* at 197:2-199:25.  It is not clear from the present record whether

Leon meant the revision surgery she had in January 2005 or a later surgery performed by a different doctor in 2006.

Leon is a California resident whose ObTape-related treatment took place in California.  On June 10, 2013, Leon served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Leon brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

**VI.  Plaintiff Graciela Urbieta (ECF No. 31 in 4:13-cv-346)**

Graciela Urbieta visited Dr. Charles Feinstein complaining of urinary incontinence, and Dr. Feinstein recommended ObTape. Dr. Feinstein implanted Urbieta with ObTape on March 8, 2005. In January 2006, Urbieta went to the emergency room complaining of a painful rash, leg pain, and vaginal odor.  She was admitted to the hospital and treated for necrotizing fasciitis.  Later that year, she was treated for abscesses by Dr. Marie Crandall. Dr. Crandall became concerned that Urbieta's ObTape was chronically infected; Dr. Crandall told Urbieta of this concern and referred her to Dr. Stephanie Kielb for further evaluation. Crandall Dep. 54:8-21, ECF No. 31-8 in 4:13-cv-346.  Dr. Crandall also told Urbieta that her ObTape might need to be removed.  Urbieta Dep. 6:1-2, 59:3-13, ECF No. 31-5 in 4:13-cv-

346.   Dr. Kielb examined Urbieta, found an erosion of the ObTape, and told Urbieta that the ObTape would have to be removed because it was causing discharge and other problems. *Id.* at 59:24-60:4; Kielb Dep. 42:13-44:4, ECF No. 31-9 in 4:13-cv-346.   After Dr. Kielb performed the excision surgery in December 2006, Urbieta's symptoms improved, and she no longer had pus.  Urbieta Dep. 60:6-13.

Urbieta is an Illinois resident whose ObTape-related treatment took place in Illinois.   On July 11, 2013, Urbieta served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.   Urbieta brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.   Her husband Mateo brought a loss of consortium claim.

## VII. Plaintiff Sharon Lovell (ECF No. 31 in 4:13-cv-377)

Sharon Lovell sought treatment for stress urinary incontinence from Dr. Bechara Tabet.   Dr. Tabet implanted Lovell with ObTape on December 27, 2004.   In May 2006, Lovell was hospitalized with a left thigh abscess and vaginal discharge, and her doctors suspected that the infection was related to Lovell's ObTape.   Dr. Tabet examined Lovell, discovered that the ObTape had eroded, and removed the entire sling.   After the

excision procedure, Dr. Tabet explained to Lovell that the ObTape "had eroded and snapped and embedded in [her] leg and caused the abscess." Lovell Dep. 130:5-14, ECF No. 31-5 in 4:13-cv-377.

Lovell is an Ohio resident whose ObTape-related treatment took place in Ohio. On July 16, 2013, Lovell served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Lovell brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## VIII.    Plaintiff Arleen Suen (ECF No. 32 in 4:13-cv-426)

Arleen Suen visited Dr. Laurence Orbuch for treatment of incontinence. Dr. Orbuch diagnosed Suen with stress urinary incontinence and recommended that she undergo an ObTape implant. Dr. Orbuch implanted Suen with ObTape on December 2, 2004. After the surgery, Suen had abnormal vaginal discharge and several follow-up operative procedures and sought treatment from Dr. William McCormack, who referred Suen to Dr. Victor Nitti. Suen visited Dr. Nitti in December 2005, and he told her that the ObTape was infected and that it would be best to remove it. At the time, Dr. Nitti understood that it was "well-established that ObTapes had a higher rate of infection than other tapes." Nitti Dep. 45:17-46:10, ECF No. 32-6 in 4:13-cv-426. Dr. Nitti

removed Suen's ObTape in December 2005.   When Dr. McCormack
followed up with Suen in May of 2006, Suen reported that her
"ongoing problems with bleeding, yeast and vaginal infections
and numbness in [her] left leg [had] all disappeared."   Suen
Dep. 103:5-8, ECF No. 32-4 in in 4:13-cv-426.   Suen also
reported that Dr. Nitti had told her that "the mesh used to act
as a sling has had a history of creating infections therefore he
removed all traces of the mesh." *Id.* at 103:8-11.

Suen is a New York resident whose ObTape-related treatment
took place in New York.   On August 8, 2013, Suen served Mentor
with a copy of her Complaint captioned in Hennepin County
District Court of the State of Minnesota.   Suen brought claims
for strict liability, negligence, breach of express warranty,
breach of implied warranty, common law fraud, constructive
fraud, and negligent and intentional misrepresentation.

## IX.  Plaintiff Sylvia Uriegas (ECF No. 29 in 4:13-cv-483)

Sylvia Uriegas visited Dr. Leopoldo Tecuanhuey complaining
of incontinence and other symptoms.   Dr. Tecuanhuey implanted
Uriegas with ObTape on October 25, 2004.   After her ObTape
implant, Uriegas experienced vaginal infections, bleeding,
malodorous discharge, incontinence, painful urination, urinary
tract infections, and pain during intercourse.   In October and
November of 2006, Dr. Tecuanhuey removed portions of Uriegas's
ObTape.   And in December of 2006, Dr. Tecuanhuey told Uriegas

that he had removed her ObTape and that he suspected that the ObTape had caused her problems.  Tecuanhuey Dep. 197:4-198:12, ECF No. 29-5 in 4:13-cv-483.

Uriegas is a Texas resident whose ObTape-related treatment took place in Texas.  On September 27, 2013, Uriegas served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Uriegas brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## X.  Plaintiff Debra Degroot (ECF No. 30 in 4:13-cv-503)

Dr. David Grapey implanted Debra Degroot with ObTape on September 29, 2004.  In November 2005, Degroot returned to Dr. Grapey complaining of chronic malodorous vaginal discharge, and she reported that she had seen a portion of her ObTape protruding from her vagina.  Dr. Grapey examined Degroot and found an erosion of the ObTape.  He removed the eroded portion of ObTape.  Degroot returned to Dr. Grapey again in April 2007 complaining of chronic malodorous vaginal discharge.  Dr. Grapey became concerned that Degroot's ObTape was chronically infected, and he referred her to Dr. Scott MacDiarmid for further treatment.  Dr. MacDiarmid told Degroot that at least some of her remaining ObTape was infected, and he recommended surgery to

12

remove more of her ObTape.   Dr. Grapey and Dr. MacDiarmid performed an excision surgery in May of 2007 to remove additional ObTape.

When she filed her Complaint, Degroot was a North Carolina resident, and all of her ObTape-related treatment took place in North Carolina.   On October 11, 2013, Degroot served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.   Degroot brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## XI.  Plaintiff Libby Hall (ECF No. 25 in 4:14-cv-61)

Libby Hall sought treatment for incontinence from Dr. Stephen Farmer.   Dr. Farmer diagnosed Hall with stress urinary incontinence and recommended that Hall undergo an ObTape implant procedure.   Dr. Farmer implanted Hall with ObTape on January 10, 2005.   Hall returned to Dr. Farmer in July 2005 with complaints of continued incontinence and dyspareunia.   Dr. Farmer examined Hall and told her that the ObTape, which was just under the vaginal mucosa, was likely the source of her pain.   Dr. Farmer also told Hall that removing the ObTape should improve her symptoms, and he removed Hall's ObTape on July 11, 2005.

Hall is a Mississippi resident whose ObTape-related treatment took place in Mississippi.   On January 23, 2014, Hall

13

served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.   Hall brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

**XII. Plaintiff Sherry Lynn Chambers (ECF No. 26 in 4:14-cv-63)**

Dr. Luis Sanz diagnosed Sherry Lynn Chambers with stress urinary incontinence and recommended that she undergo a transobturator tape procedure.   Dr. Sanz implanted Chambers with ObTape on April 1, 2004.   In September 2004, Chambers complained to Dr. Sanz of some vaginal bleeding, and Dr. Sanz recommended a revision surgery to try and stop the bleeding.   Chambers Dep. 91:1-92:10, ECF No. 26-4 in 4:14-cv-63.   After the September 2004 revision surgery, Chambers continued to experience problems with bleeding, and she had two additional revision surgeries during June and October of 2005.   At some point after the October 2005 surgery, the sling scratched Chambers's husband during intercourse.

In 2006, Chambers was still experiencing bleeding, so she consulted with Dr. Briana Walton in August or September of 2006. Dr. Walton observed an erosion of the ObTape, and she showed the erosion to Chambers's husband.   Dr. Walton told the Chamberses, "This is what scratched you. This is the erosion of the sling.

14

This is what's making you bleed." *Id.* at 138:9-15. After that, Chambers was referred to Dr. George Webster, who recommended a complete removal of the ObTape.

Chambers is a Maryland resident whose ObTape-related treatment took place in Washington, D.C., Virginia, and North Carolina. On February 7, 2014, Chambers served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Chambers brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

DISCUSSION

Each Plaintiff filed her action in Minnesota state court, and Mentor removed each Plaintiff's action to the United States District Court for the District of Minnesota. The cases were later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Plaintiffs' claims. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2013 WL 286276, at *7 (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

## I.   Strict Liability and Negligence Claims

Mentor contends that Plaintiffs' strict liability and negligence claims are time-barred under Minnesota law.[3]   The statute of limitations for a strict liability claim is four years.  Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years.").  The statute of limitations for a negligence claim is six years.   Minn. Stat. § 541.05 subd. 1(5) (establishing six-year limitation period for personal injury claims not arising in contract or strict liability).

Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal

---

[3] Mentor also argues that Plaintiffs' warranty claims are time-barred. Jackson, Rupert, Klum, Leon, Urbieta, Lovell, Suen, Degroot, Hall, and Chambers do not contest summary judgment as to their warranty claims, so Mentor is entitled to summary judgment on those claims.  Charles did not respond to Mentor's summary judgment motion on this point and does not dispute that her warranty claims accrued when she was implanted with ObTape on February 9, 2004.  See Minn. Stat. § 336.2-725(2) ("A breach of warranty occurs when tender of delivery is made[.]").  She also does not dispute that she did not file her action within four years after her warranty claims accrued.  See Minn. Stat. § 336.2-725(1) (establishing four-year limitations period for warranty claims).   Accordingly, Mentor is entitled to summary judgment on Charles's warranty claims.  Uriegas also did not file her complaint within four years after her ObTape implant.  Uriegas contends that the statute of limitations for her warranty claims is tolled due to fraudulent concealment.  As discussed in more detail below, fraudulent concealment does not apply to Uriegas's claims, and Mentor is entitled to summary judgment on her warranty claims.

connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law). "A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Id.* For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, each Plaintiff contends that she did not learn of a connection between ObTape and her injuries until 2011 or later – either based on a television commercial regarding mesh complications or a consultation with a new doctor. But each Plaintiff knew that she suffered some injuries caused by ObTape well before then.

Michele Jackson.   In October 2004, Jackson visited her doctor because she was experiencing pain, and her doctor found an erosion of the ObTape.  Her doctor recommended removal of the exposed portion of the ObTape, and he told Jackson that the revision surgery "would most likely take away her pain."  Barnes Dep. 16:6-13.   Therefore, Jackson knew by October 2004 that there was a likely connection between ObTape and some of her injuries.  She did not file her complaint until more than eight years later, in March 2013.

Andrea Rupert.  After Rupert reported to the emergency room complaining of extreme pain and vaginal bleeding in June 2005, Rupert was diagnosed with an infection and her doctor recommended that her ObTape be removed.   When Rupert's doctor removed the ObTape, he discovered an abscess.   Rupert's doctor encouraged Rupert to contact Mentor about her problems with ObTape, which she did.   And in August 2005, Rupert visited another doctor, who noted that Rupert was concerned that half of her ObTape was still in her body and that it may become infected.   Thus, by August 2005, Rupert connected her injuries to ObTape.   She did not file her complaint until nearly eight years later, on April 1, 2013.

Wendy Charles.   Charles began experiencing severe groin pain several months after her ObTape implant.  Based on her independent research, Charles became convinced by May 2005 that

there was a connection between her pain and the ObTape.  Charles persuaded her doctor to remove her ObTape in March 2006; after the ObTape removal, Charles did not experience more groin pain symptoms.  Therefore, Charles was aware of a connection between ObTape and her injuries by March 2006 at the latest.  She did not file her complaint until more than seven years later, on May 7, 2013.

Carrie Klum.  Klum visited her doctor complaining of pressure in the lower abdomen and bleeding.  She was diagnosed with an infection and erosion of her ObTape in 2005.  At the time, Klum's doctor told her that her pain and bleeding were caused by the ObTape.  And in February 2006, when Klum experienced similar symptoms, her doctor told her that the entire ObTape needed to be removed.  Thus, by February 2006 at the latest, Klum knew that her injuries were connected to ObTape.  She did not file her complaint until more than seven years later, on April 29, 2013.

Olga Leon.  Leon was diagnosed with an erosion of her ObTape in January 2005 after she complained to her doctor of pain and irritation.  The doctor told Leon that there was a problem with her ObTape and he would have to perform a revision surgery.  Therefore, Leon knew by January 2005 that some of her injuries were connected to ObTape.  Furthermore, in 2005 or

2006, Leon started thinking about bringing a lawsuit regarding ObTape. But Leon did not bring her lawsuit until June 10, 2013.

Graciela Urbieta. After her ObTape implant, Urbieta experienced a variety of problems; her doctor became concerned that Urbieta's ObTape was chronically infected, and she referred Urbieta to a specialist. The specialist diagnosed Urbieta with an erosion of ObTape in late 2006 and told Urbieta that the ObTape would have to be removed because it was causing discharge and other problems. After Urbieta's excision surgery in December 2006, Urbieta's symptoms improved. Therefore, Urbieta knew by December 2006 that there was likely a connection between ObTape and at least some of her injuries. She did not file her complaint until more than six years later, on July 11, 2013.

Sharon Lovell. In May 2006, Lovell was hospitalized with a left thigh abscess and vaginal discharge, and her doctors suspected that the infection was related to Lovell's ObTape. After an examination, Lovell's doctor confirmed that the ObTape had eroded, and he removed the entire sling. At the time, Lovell's doctor explained to her that the ObTape had eroded and caused the abscess. Therefore, Lovell knew by May 2006 that there was a connection between her ObTape and her injuries. She did not file her complaint until more than seven years later, on July 16, 2013.

Arleen Suen.   Suen experienced abnormal vaginal discharge and had to have several follow-up operative procedures after her ObTape implant.   When she was referred to another doctor for treatment, that doctor told Suen that the ObTape was infected and that it would be best to remove it.   Suen's doctor told her that ObTape had a history of creating infections.   After her ObTape was explanted in December 2005, Suen's adverse symptoms disappeared.   Thus, Suen knew by December 2005 that there was a connection between ObTape and her injuries.   She did not file her complaint until more than seven years later, on August 8, 2013.

Sylvia Uriegas.   Uriegas had multiple adverse symptoms after her ObTape implant and sought additional treatment from her doctor.   The doctor removed portions of Uriegas's ObTape and told her in December of 2006 that he suspected that the ObTape had caused her problems.   Therefore, Uriegas knew by December 2006 that there was a possible connection between ObTape and her adverse symptoms.   She did not file her complaint until nearly seven years later, on September 27, 2013.

Debra Degroot.   After her ObTape implant, Degroot experienced chronic malodorous vaginal discharge and saw a portion of her ObTape protruding from her vagina.   In November 2005, Degroot's doctor diagnosed Degroot with an erosion of the ObTape and removed the eroded portion.   Degroot continued to

experience malodorous discharge. In April 2007, Degroot's doctor told her that her remaining ObTape was infected and needed to be removed, so Degroot had another excision procedure in May 2007. Therefore, Degroot knew by April 2007 at the latest that there was a connection between ObTape and at least some of her injuries. She did not file her complaint until more than six years later, on October 11, 2013.

Libby Hall. Hall had problems with dyspareunia after her ObTape implant. In July 2005, Hall's doctor told her that the ObTape was likely the source of her pain. The doctor also told Hall that her symptoms should improve if the ObTape was removed. Therefore, Hall knew in July 2005 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than eight years later, on January 23, 2014.

Sherry Lynn Chambers. After her ObTape implant, Chambers experienced vaginal bleeding and had at least three revision surgeries by October 2005. In 2006, Chambers was still experiencing vaginal bleeding, so she visited a different doctor, who found an erosion of the ObTape and told Chambers that the erosion was causing her bleeding and had scratched Chambers's husband during intercourse. Therefore, Chambers knew by 2006 at the latest that her symptoms were connected to

ObTape.   She did not file her complaint until more than seven years later, on February 7, 2014.

In summary, each Plaintiff connected at least some of her injuries to ObTape more than six years before she filed suit. Accordingly, their strict liability and negligence claims are time-barred under Minnesota law.   Plaintiffs contend that it is not enough that they made a connection between ObTape and some of their injuries.   Rather, they appear to argue that they must have been on notice that a *defect* in ObTape caused their injuries.   Plaintiffs did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a product *defect.*   Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product.   *Klempka*, 963 F.2d at 170.

Plaintiffs nonetheless contend that two Eighth Circuit cases and one Minnesota District Court case support denial of summary judgment on their negligence and strict liability claims.   The Court disagrees.   First, they point to *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), where the plaintiffs alleged that they suffered lung damage due to their exposure to a toxic chemical at their workplace.   But there, unlike here, the plaintiffs' doctors initially told the plaintiffs that there was no correlation between their symptoms

23

and the chemical. *Id.* at 399. The Eighth Circuit thus concluded that the plaintiffs' claims did not accrue until the cause of the plaintiffs' injuries was rationally identified. Second, Plaintiffs point to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004). In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek. The Eighth Circuit reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco. *Id.* at 922. Third, Plaintiffs point to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013). In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage. The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection. The district court noted that the "first article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007. *Id.*

Plaintiffs' cases. In *Hildebrandt, Tuttle,* and *Huggins* are all distinguishable from Plaintiffs' cases. In *Hildebrandt, Tuttle,* and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something

else, and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury. In contrast, here, each Plaintiff suffered injuries that were connected to an erosion or infection of the ObTape, and each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure, if not before.

Plaintiffs argue that even if Minnesota's discovery rule does not save their strict liability and negligence claims, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988); *accord Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, each Plaintiff knew of, strongly suspected, or had enough information to know of a connection

between ObTape and at least some of her injuries by the time of her excision procedure, if not before. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Plaintiffs pointed to no evidence that they took any action to investigate their potential claims even though they knew (or had enough information to know) there was a connection between their injuries and the ObTape.[4] Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations.

None of the Plaintiffs filed their complaints within six years after their claims accrued. Their strict liability and negligence claims (including their negligent misrepresentation claims) are therefore time-barred. The loss of consortium claims of Anthony Klum and Mateo Urbieta fail because their

---

[4] There is evidence that two plaintiffs attempted an investigation regarding their problems with ObTape. First, Charles researched the issue and even had her doctor remove the ObTape because she was convinced it was causing her pain, but she did nothing to pursue her claims until years later. Second, Urbieta suspected that her implanting doctor had placed the sling incorrectly. About a year after her excision procedure, Urbieta asked the physician who excised her ObTape to make a statement to that effect. Urbieta Dep. 65:20-66:1. The physician refused and also told Urbieta that leg infections had been reported with mesh slings. Kielb Dep. 31:23-32:1. Urbieta offered no explanation for why she waited a year before asking questions of her physicians; such a delay does not demonstrate reasonable diligence.

wives' claims fail.  *Kohler v. Fletcher*, 442 N.W.2d 169, 173 (Minn. Ct. App. 1989).  ("As a husband's claim for loss of consortium is derivative only, if his wife's underlying tort claim fails, his claim for loss of consortium also fails.").

## II. Fraud and Intentional Misrepresentation Claims

Mentor also seeks summary judgment on Plaintiffs' fraud and intentional misrepresentation claims.[5]  The statute of limitations for fraud claims is six years.  Minn. Stat. § 541.05 subd. 1(6).  A fraud cause of action "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  *Id.*  But "the facts constituting fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered."  *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 674 (D. Minn. 1993) (quoting *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962)).  "The failure to actually discover the fraud does not toll the statute of limitations if it is inconsistent with reasonable diligence."  *Id.; accord Blegen v. Monarch Life Ins.*

---

[5]  In addition to their common law fraud and intentional misrepresentation claims, Plaintiffs assert "constructive fraud" claims.  The Court construes those claims as claims for fraudulent misrepresentation based on the concealment of a material fact.  *See Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 350 (Minn. Ct. App. 2001) ("Under Minnesota law, fraudulent misrepresentation based on the concealment of a material fact occurs when one party knowingly conceals a material fact that is 'peculiarly within his own knowledge,' and the other party relies on the presumption that the fact does not exist.") (quoting *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 364, 244 N.W.2d 648, 650 (1976)).

*Co.*, 365 N.W.2d 356, 357–58 (Minn. Ct. App. 1985). Plaintiffs "carry the burden of proving that they did not discover the facts constituting fraud within six years before commencement of the action." *Veldhuizen*, 839 F. Supp. 674. "They must also show that they could not have discovered the fraud through the exercise of reasonable diligence." *Id.*

Again, each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure, if not before. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Plaintiffs pointed to no evidence that they exercised reasonable diligence to investigate their potential claims even though they knew (or had enough information to know) there was a connection between their injuries and the ObTape. They also did not point to evidence that they could not have discovered enough facts to support their fraud and intentional misrepresentation claims had they started investigating the connection they made (or had enough information to make) between ObTape and their injuries within a reasonable time after they discovered the connection. For these reasons, the Court finds

that Plaintiffs' fraud and intentional misrepresentation claims are time-barred.

## CONCLUSION

For the reasons set forth above, Mentor's summary judgment motions are granted as to Jackson (ECF No. 37 in 4:13-cv-93), Rupert (ECF No. 41 in 4:13-cv-101), Charles (ECF No. 34 in 4:13-cv-151), Klum (ECF No. 34 in 4:13-cv-153), Leon (ECF No. 40 in 4:13-cv-241), Urbieta (ECF No. 31 in 4:13-cv-346), Lovell (ECF No. 31 in 4:13-cv-377), Suen (ECF No. 32 in 4:13-cv-426), Uriegas (ECF No. 29 in 4:13-cv-483), Degroot (ECF No. 30 in 4:13-cv-503), Hall (ECF No. 25 in 4:14-cv-61), and Chambers (ECF No. 26 in 4:14-cv-63).

IT IS SO ORDERED, this 21st day of December, 2015.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA